# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:08-cv-00390-FDW

| | |
|---|---|
| MOTEL 6 OPERATING, L.P., | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )     **ORDER**<br>) |
| GASTON COUNTY, NORTH CAROLINA, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

THIS MATTER comes now before the Court upon Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Doc. No. 23). Plaintiff has responded to the Motion (Doc. No. 26), and the Court has determined that this matter requires immediate resolution. Defendants' Motion is DENIED.

## **BACKGROUND**

On August 19, 2008, representatives from the Gaston County Health Department, Police Department, Fire Department, and other officials from the City of Gastonia conducted a "mass raid" of Plaintiff's motel located at 1721 Broadcast Street, Gastonia, North Carolina. (Am. Compl. ¶ 20.) According to Plaintiff's Amended Complaint, the purpose of this raid was not to conduct a health inspection, but rather was concocted to find "sufficient violations in order to reach a score low enough to immediately revoke [Plaintiff's] health permit and close the Motel 6." (Am. Compl. ¶ 36.) Defendants alleged motivation for this concoction is the fact that an off-duty police officer from Mississippi was killed in the parking lot of an adjacent hotel by individuals who may have had an

association with other individuals staying at Plaintiff's motel.

Plaintiff filed this lawsuit on August 22, 2008, seeking preliminary injunctive relief. On August 29, 2008, the Gaston County Health Department reinspected Plaintiff's motel under an agreement reached by the parties and again found that the motel failed to pass health inspection. According to Defendants, numerous problems still existed, including "[the] presence of live roaches and other bugs, holes in walls and floor coverings, tears in furnishings, paint chips, damaged vanities, [and] missing covers on stained or damaged boxsprings or mattresses." (Def.'s Status Report, Doc. No. 20.) Plaintiff alleges that this reinspection was also a sham, and that Defendants were asking Plaintiff to meet unrealistic "standards of a new facility [with] no violations." (Am. Compl. ¶ 32.) On September 5, 2008, Defendants moved to dismiss pursuant to Rule 12(b)(1), arguing that Plaintiff had failed to exhaust its administrative remedies, and in the alternative that this Court abstain from exercising jurisdiction under the Younger or Burford doctrines.

## STANDARD

A court will only grant a motion to dismiss pursuant to Rule 12(b)(1) "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The court must accept as true the allegations of the complaint. Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002). The Court must consider the evidence in the light most favorable to the plaintiff. Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999).

## ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendants are correct in their citation of the general principle that constitutional claims in

federal court are not exempt from the requirement that administrative remedies must be exhausted. Since Defendants filed their Motion to Dismiss, however, Plaintiff has amended its Complaint to include a claim under 42 U.S.C. § 1983. A plaintiff bringing a claim under § 1983 does not have to exhaust its administrative remedies prior to filing a case in federal court. Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 512 (1982) ("[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."). Exhaustion has nevertheless been required when the plaintiff is proceeding pursuant to a statute where Congress has specifically required exhaustion as a prerequisite to judicial review. See Nationsbank Corp. v. Herman, 174 F.3d 424 (4th Cir. 1999); Taylor v. Barnett, 105 F. Supp. 2d 483 (E.D. Va. 2000). There is, however, no such statutory requirement here. Exhaustion has also been required when the administrative proceedings are coercive, rather than remedial. See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619 (1982); Moore v. City of Asheville, N.C., 396 F.3d 385, 395 n.4 (4th Cir. 2005). However, Plaintiff has initiated the administrative action here; the action is therefore remedial, not coercive. In short, the Court sees no reason to depart from the Supreme Court's position in Patsy that a plaintiff need not exhaust remedial, administrative remedies before bringing suit under § 1983.

## B. *Younger* Abstention

Abstention under the Supreme Court case of Younger v. Harris, 401 U.S. 37 (1971), does not arise from a lack of jurisdiction, "but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." Ohio Civil Rights Comm'n, 477 U.S. at 626. Under Younger, a federal court is to abstain from exercising jurisdiction "if there is: (1) an ongoing state judicial proceeding, instituted prior to any substantial

progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165 (4th Cir. 2008).

It is undisputed that on August 20, 2008, two days prior to filing the instant action, Plaintiff instituted an action in the North Carolina Office of Administrative Hearings seeking administrative relief from the Gaston County Health Department and Gaston County. As discussed earlier, the administrative action in question is remedial, rather than coercive. According to Plaintiff, remedial actions are never "judicial in nature," New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 369 (1989), and therefore do not meet the first element of Younger. As already discussed, the remedial/coercive nature of administrative proceedings is crucial to determining whether a plaintiff need exhaust her remedies before bringing an action under 42 U.S.C. § 1983. However, the Court fails to see a connection between this rule and Plaintiff's conclusion that a remedial proceeding is necessarily non-judicial. In fact, the Fourth Circuit has cited favorably a district court's finding that "there can be little doubt that [administrative] proceedings . . . were 'judicial in nature'" when those proceedings were "conducted in an adversarial, trial-like setting, with discovery, witness testimony and exhibits." Laurel Sand, 519 F.3d at 166 (quoting Harper v. Pub. Serv. Comm'n, 291 F. Supp. 2d 443, 455 (S.D. W. Va. 2003), rev'd, 396 F.3d 348 (4th Cir. 2005)). The administrative action in question will be heard by an administrative law judge ("ALJ") under North Carolina's Administrative Procedure Act ("APA"). Under the APA:

> [T]he parties must be given an opportunity to present arguments on issues of law and policy and an opportunity to present evidence on issues of fact, and a party may cross-examine any witness, including the author of a document prepared by, on

> behalf of, or for use of the agency and offered in evidence. Furthermore, any party may submit rebuttal evidence.

Russell J. Davis, 1 N.C. Index 4th Administrative Law and Procedure § 39 (citing N.C. Gen. Stat. §§ 150B-22 et seq.). Accordingly, given the judicial mechanisms the APA provides, the same ones cited by the Fourth Circuit in Laurel Sand, the Court holds that the administrative proceeding at issue here is judicial in nature.

The second Younger factor—that important, substantial, or vital state interests be implicated—is the original justification for applying Younger in civil contexts. Ohio Civil Rights Comm'n, 477 U.S. at 627 ("We have since [Younger v. Harris] recognized that our concern for comity and federalism is equally applicable to certain other pending state proceedings. We have applied the Younger principle to civil proceedings in which important state interests are involved."). Plaintiff has not addressed this factor. It is well-settled that the ability of states and municipalities to regulate health standards is an important state interest. Cf. Hill v. Colorado, 530 U.S. 703, 715 (2000) ("It is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'") (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996)).

Plaintiff more hotly contests the third and final Younger element, claiming that it will not have an adequate opportunity to raise all of its federal constitutional claims in the state administrative proceeding. First, Plaintiff argues that it will only be permitted to address the closure of the motel under the factors in N.C. Gen. Stat. § 150B-23. That statute calls upon the ALJ to consider whether an agency: "(1) Exceeded its authority or jurisdiction; (2) Acted erroneously; (3) Failed to use proper procedure; (4) Acted arbitrarily or capriciously; or (5) Failed to act as required by law or rule." N.C. Gen. Stat. § 150B-23(a) (West 2008). Although none of these factors

explicitly addresses federal constitutional law, Supreme Court dicta indicates that it may be sufficient that the ALJ will surely "construe its own statutory mandate in the light of federal constitutional principles." Ohio Civil Rights Comm'n, 477 U.S. at 629. In particular, the last two factors of § 150B-23, whether an agency has acted arbitrarily and capriciously and whether it has failed to act as otherwise required by law, seem aptly situated for consideration of federal constitutional principles. Even if this were not the case, the APA provides for judicial review. N.C. Gen. Stat. § 150B-43 (West 2008) ("Any person who is aggrieved by the final decision in a contested case . . . is entitled to judicial review of the decision under this Article."). Plaintiff fears that any judicial review would be confined to the administrative record and would therefore not adequately address its constitutional challenges. This conception of judicial review is inaccurate. There is always an applicable standard of review in an appeal. That an ALJ's factual findings are entitled to a certain level of deference[1] does not foreclose a reviewing court from considering constitutional standards. Indeed, the North Carolina Supreme Court has explicitly recognized that one ground "for reversing or modifying an agency's decision [is] that the decision was 'in violation of constitutional provisions.'" N.C. Dept. of Env't and Natural Res. v. Carroll, 599 S.E.2d 888, 894 (N.C. 2004). Therefore, there is no merit to Plaintiff's argument that it will not be afforded sufficient judicial review of its constitutional challenges.

Plaintiff also argues that administrative review is inadequate because it cannot bring its claims against the City of Gastonia or the individual Defendants before the ALJ. The crux of

---

[1] Under the APA and case law from the North Carolina Supreme Court, "the substantive nature of each assignment of error dictates the standard of review." N.C. Dept. of Env't and Natural Res. v. Carroll, 599 S.E.2d 888, 894 (N.C. 2004); see also N.C. Gen. Stat. § 150B-51(b).

Plaintiff's Amended Complaint is that the Gaston County Health Department revoked Plaintiff's health permit and in so doing violated Plaintiff's due process and equal protection rights. The current administrative proceeding is capable of redressing that alleged wrong. That the APA does not permit the same degree of joinder as the Federal Rules of Civil Procedure does not render its administrative proceedings inadequate. A contrary holding would render administrative review and the general exhaustion requirement a nullity; plaintiffs could artfully add parties outside the scope of APA review. The Court therefore holds that the administrative proceeding and the subsequent state system of judicial review are adequate to address Plaintiff's constitutional concerns.

Having determined that the three Younger abstention factors are satisfied, the Court must abstain from exercising jurisdiction over this case unless an exception to Younger is present. The Supreme Court has held that a court may exercise equitable intervention, disregarding Younger, when there is

> a showing of "bad faith" or "harassment" . . . where the state law to be applied . . . is "flagrantly and patently violative of express constitutional prohibitions," . . . or where there exist other "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment."

Kugler v. Helfant, 421 U.S. 117, 124 (1975) (quoting Younger, 401 U.S. at 43-44, 46); see also Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006). The Court will dispense with the latter exceptions first. Clearly, facially neutral state and local laws providing for health inspections do not violate the Constitution. Similarly, the Court does not believe there to be extraordinary circumstances resulting in irreparable injury.[2] Thus, the issue is whether Plaintiff has made a

---

[2] As the Court noted in a text-only Order on August 25, 2008, "Plaintiff has only adequately alleged monetary losses which may be remedied with legal damages."

showing of bad faith or harassment.³ In the context of a criminal case, bad faith is demonstrated by showing that state officials undertook a case "without hope of obtaining a valid conviction." Perez v. Ledesma, 401 U.S. 82, 85 (1971); Gilliam v. Foster, 75 F.3d 881 (4th Cir. 1996). In the thirty-six years since Younger v. Harris was decided, the Supreme Court has never applied the bad faith exception. 17B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4255 (West 2008). Nor, as far as the Court has been able to determine, has the Fourth Circuit. The Fourth Circuit has, however, pointed to a case in which bad faith was found. In Black Jack Distributors, Inc. v. Beame, 433 F. Supp. 1297 (S.D.N.Y. 1977), the court found bad faith when there had been multiple arrests but no prosecutions, coupled with the statement of an official that "despite all constitutional limitations we will stop at nothing when we put these [sexually oriented enterprises] out of business. We undertake activities knowing that they are illegal." Id. at 1306; Suggs v. Brannon, 804 F.2d 274, 278 (4th Cir. 1986).

A key allegation in Plaintiff's Amended Complaint is that on April 14, 2008, Sergeant Paul Smith of the Gastonia Police Department told Plaintiff's general manager, Joyce Reynolds, that "the Police Department Chief and Gastonia City Manager were upset at Motel 6 because of the homicide . . . [and that] the City was going to try and shut down Motel 6." (Am. Compl. ¶ 19.) Plaintiff alleges that the August 19 inspection was the fulfillment of this warning and that the inspection "was a sham and . . . nothing more than a pretext to immediately revoke Motel 6's permit to operate its lodging establishment." (Am. Compl. ¶ 21.) The Court holds that this allegation, given its

---

³ It is unclear whether bad faith and harassment are two different concepts or one single concept, but they have been treated in the Fourth Circuit as "much the same." Timmerman v. Brown, 528 F.2d 811, 815 (4th Cir. 1975); see also 17B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4255 & n.6 (West 2008).

specificity in its reference to statements made by Sergeant Smith and the subsequent events, is a sufficient showing of bad faith or harassment. However, the Court notes that in the current procedural posture, no discovery has been taken. Significantly, Sergeant Smith has not been deposed. If, during the course of discovery, Sergeant Smith recants his statement, it appears that Plaintiff has inaccurately represented that statement, or it otherwise becomes apparent that Defendants' inspection was not carried out in bad faith or with the purpose to harass, the Court will revisit the issue of Younger abstention.

**C. *Burford* Abstention**

The Supreme Court has summarized the Burford doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Public Service, Inc., 491 U.S. at 361 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)). The Burford doctrine is inapplicable to this case. Although this case does present a problem of substantial public import—the enforcement of public health standards—there are no difficult questions of state law. The only question is whether Defendants executed facially neutral laws and regulations in an unconstitutional manner. This question is one of routine federal constitutional law, not a difficult question of state law. In addition, there is no indication that the state of North Carolina had attempted to establish a coherent policy with respect to health inspections. These inspections are carried out by the various health boards in the state's one hundred counties. Thus, there is no concern that any action of this Court will disrupt

state efforts to establish a coherent policy.

## CONCLUSION

Plaintiff's Amended Complaint includes a cause of action under 42 U.S.C. § 1983. As such, Plaintiff is not required to exhaust all remedial administrative remedies before pursuing this action.

Although the Court holds that the elements of <u>Younger</u> abstention have been satisfied, Plaintiff has made a sufficient showing of bad faith or harassment. Therefore, the Court will not abstain from exercising jurisdiction in this case. However, the Court is ready to reevaluate this position should Plaintiff's allegations prove inaccurate.

The elements necessary for <u>Burford</u> abstention have not been satisfied, and the Court declines to abstain under that doctrine.

Accordingly, Defendants' Motion to Dismiss is DENIED.

Having resolved the questions of subject matter jurisdiction and abstention, the Court now directs the parties to recommence expedited discovery. This expedited discovery, however, will not be open-ended, but is limited in the following respects: (1) it shall be narrowly tailored to the four elements of a preliminary injunction; (2) all requests for the production of documents shall be limited to thirty (30) days prior to the closing of Plaintiff's motel—July 20, 2008—and shall be due by the close of business on September 19, 2008; and (3) neither party shall take more than two (2) oral depositions, all depositions to be taken on or before September 26, 2008.[4] The Court will schedule a preliminary injunction hearing as soon as possible under the Court's docket and after the close of

---

[4] The parties may, of course, request documents and conduct depositions beyond the scope of these limitations during the course of regular discovery. These limitations are designed to focus the parties on those matters most pertinent to the resolution of Plaintiff's request for preliminary injunctive relief.

expitided discovery on September 26, 2008.

    IT IS SO ORDERED.            Signed: September 18, 2008

*Frank D. Whitney*
United States District Judge